**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERNST DORCELY, | : | CIVIL ACTION NO: |
|     Plaintiff, | : | |
| | : | |
| V. | : | 3:03 CV 114 (AVC) |
| | : | |
| FIRST UNUM LIFE INSURANCE COMPANY, | : | |
|     Defendant. | : | June 3, 2004 |

**JOINT TRIAL MEMORANDUM**

**(1)**     <u>**TRIAL COUNSEL**</u>**:**

       For the Plaintiff:      Mark J. Fox, Esq.
                                      125 Elm Street
                                      New Canaan, CT    06840
                                      (203) 972-3301
                                      (203) 972-3328 (fax)
                                      MJFOXLAW@aol.com

       For the Defendant:     Alexander H. Schwartz, Esq. (CT 05773)
                                      3695 Post Road
                                      P.O. Box 701
                                      Southport, CT 06890
                                      (203) 255-9829
                                      (203) 255-9839
                                      alex@ahschwartz.com

**(2)**     <u>**JURISDICTION**</u>**:**

      Subject matter jurisdiction exists pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §1001, et seq.

**(3)**     <u>**NON-JURY TRIAL**</u>**:**

      The parties agree that this is a non-jury case.

1

**(4)    LENGTH OF TRIAL:**

The plaintiff's position is that the trial in this matter will require approximately 1 day to try.

The defendant's position is that the plaintiff is not entitled to a traditional "trial" of his claim before the court.  Rather, this court will review the administrative record and conduct the functional equivalent of a bench trial on the papers.  Muller v. First Unum Life Insurance Co., 341 F.3d 119, 124 (2d Cir. 2003).  Critchlow v. First Unum Life Ins. Co., 198 F. Supp.2d 318, 322 (W.D.N.Y. 2002), aff'd 340 F.3d 130 (2d Cir. 2003). Indeed, consistent with the Court's April 26, 2004 Order, the defendant, First Unum Live Insurance Company ("Unum") will be filing a Motion for Judgment on the Administrative Record, along with proposed Findings of Fact, Conclusions of Law and a Memorandum of Law.

**(5)    FURTHER PROCEEDINGS:**

In accordance with the court's April 26 Order on Defendant's Motion for Judgment on the Administrative Record, Unum will be refiling its Motion for Judgment on the Administrative Record along with Proposed Findings of Fact, Conclusions of Law and a Memorandum of Law.  Unum submits that the case should be disposed of by that Motion.

**(6)    NATURE OF THE CASE:**

**PLAINTIFF'S STATEMENT:**

Plaintiff was an employee of Swiss Bank in Stamford, Connecticut. He was covered through his employment by a policy of employee disability insurance issued by defendant. From February 29, 2000 until April 24, 2000 defendant paid plaintiff short term disability benefits as a result of injury to plaintiff's eye. Plaintiff submitted a claim for long term disability benefits Defendant denied plaintiff's claim for long term disability benefits. Plaintiff ERNST DORCELY  seeks payment of long term disability benefits from April 25, 2000 until the present pursuant to the terms and conditions of the insurance policy.

**DEFENDANT'S STATEMENT:**

Prior to February 22, 2000, the plaintiff was employed as an Operations Clerk for UBS AG in its Stamford, Connecticut office.  As an employee of UBS AG, the plaintiff was the beneficiary of a long-term disability policy (the "Policy") administered by defendant Unum.  The Policy is one part of an extensive employee welfare benefit plan UBS AG granted to its employees.  (The "Plan").  The Plan, and hence the Policy, are subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.  ("ERISA").

On or about May 18, 2000, the plaintiff claimed to be disabled on account of glaucoma and eye surgery, and sought benefits under the Policy.  Initially, plaintiff failed to provide Unum with appropriate authorizations to enable it to obtain medical information and it denied his claim on that basis.  Several months later, plaintiff contacted Unum and it permitted him to reinstate his claim.

Thereafter, plaintiff submitted medical documentation which purportedly supported his claim.  Unum conducted a vocational analysis of plaintiff's position and referred the medical information it had received from the plaintiff to its medical consultants.  After reviewing all the information in the file and receiving the reports of its consultants, Unum determined that the plaintiff's medical condition did not establish that he was disabled as defined by the terms and conditions of the Policy.  Unum thereafter denied the plaintiff's application for benefits.

Plaintiff pursued his administrative appellate remedies.  Unum provided plaintiff with the opportunity to submit further information in support of his position that he was disabled, and Unum reviewed whatever plaintiff and his attorney submitted, along with all the other information in the claim file.  On review, Unum upheld its earlier decision.

The plaintiff thereafter brought this action in the Superior Court for the Judicial District of Stamford-Norwalk at Stamford.  Unum successfully removed this case because this court has exclusive jurisdiction over the plaintiff's ERISA claim.

Unum's liability, if any, to the plaintiff is limited to 24 months of benefits, less setoffs to which it is entitled by virtue of plaintiff's receipt Worker's Compensation Benefits and an award from a personal injury action he pursued on account of a third party's negligence that resulted in his "disability."

3

"Disability" under the Policy has two definitions, and the definition changes after a recipient is disabled for more than 24 months.  A claimant is "disabled" during the first 24 months if on account of injury or sickness he/she:

cannot perform each of the material duties of his regular occupation;

After benefits have been paid and received for 24 months, a claimant is "disabled:"

if the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education or experience, as well as prior earnings.

The plaintiff sought benefits and Unum reviewed his application using the first, "pre-24 month" definition of "disability."  Because the issue of plaintiff's "disability" under the second definition was not presented to the administrator, the court cannot review a claim for benefits beyond the first 24 months of benefits.  Peterson v. Continental Casualty Company, 282 F.3d 112, 117-118 (2d Cir. 2002).


(7)    **TRIAL BY MAGISTRATE JUDGE:**

N/A

(8)    **LIST OF WITNESSES:**

***Plaintiff's witnesses***:

Ernst Dorcely - Plaintiff

Michael A. Swerdin, M.D. - Treating ophthalmologist.

***Defendants' Witnesses:***

As the Defendant set forth in §4 of this Joint Trial Memorandum the plaintiff is not entitled to present any live testimony and the court should limit its review of the plaintiff's claim to the administrative record prepared below.

**(9)     EXHIBITS:**

**Plaintiff's Exhibit List.**

Documents contained in defendant First Unum's file on plaintiff's claim.

Disability Insurance policy

Summary of disability coverage annexed to complaint as Exhibit A.

**Defendant's Exhibit List.**

The defendant contends that the sole evidence that the court may rely upon in its determination of the plaintiff's claim is the administrative record, a copy of which is on file in this matter, having been attached to Unum's November 2003 Motion for Judgment on the Administrative Record.  Unum is providing the court with a PDF copy of the administrative record to be used in conjunction with the "hard copy" already on file.

**10.     TRIAL TO COURT:**

**A.     PLAINTIFF'S PROPOSED FINDINGS OF FACT**

1. That plaintiff Ernst Dorcely's job was reconciling banking transactions by reading small numbers and figures on a computer screen. That because of his eye injury  plaintiff can no longer accurately read a computer screen and this fact is documented by the report of Dr. Michael Swerdin contained in defendant's claim file. That plaintiff Ernst Dorcely has not recovered from his disability and cannot perform each of the material duties of his regular occupation and is entitled to payment of 24 months of disability benefits. That such benefits would have expired on February 28, 2002 but were only paid for two months and have been wrongfully withheld by defendant since April 24, 2000. Plaintiff is therefore entitled to an additional 22 months of payments.

2. That by reason of his disability the plaintiff cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education or experience, as well as prior training. That by reason

5

of this circumstance plaintiff is entitled to payment of additional long term disability benefits from March 1, 200w until the present.

3. That the cutoff of disability benefits was unsupported by, and inconsistent with the medical reports and records contained in the claim file maintained by the defendant.

B.     DEFENDANT'S PROPOSED FINDINGS OF FACT

**SOURCE[1]**

1.     Plaintiff, through his employer, UBS AG, submitted an application for benefits under the Policy on or about May 18, 2000.  In that application, his employer stated that his last day of work was February 21, 2000.     1-5

2.     Along with the application, plaintiff submitted a statement from Dr. Michael Swerdin, his attending physician, who indicated that plaintiff demonstrated objective medical findings of "persistent uveitis left eye with decreased vision and glaucoma. History of trauma to left eye with cataract removal 1/00."     8

3.     Unum assigned Carla Tyler-Bailey to process plaintiff's claim for short term disability benefits.  She spoke with plaintiff on May 23, 2000.  In that conversation he told her that he was diagnosed with glaucoma, that his last day of work was February 21, 2000, and that his attending physician had disabled him as of February 21, 2000. Based on the conversation and the materials plaintiff, his employer and his attending physician had presented, Ms. Tyler-Bailey approved short term disability benefits for 6 weeks.     15

---

[1] Numerical citations are to the Administrative Record prepared and compiled below.

4.   Unum thereafter assigned the plaintiff's claim to its Long Term
     Disability Unit for analysis.  On August 16, 2000, Tracy Balboni, one
     of Unum's Long Term Disability Customer Care Specialists, wrote  to
     plaintiff:

          We have received the claim from Short Term
          Disability....Please note that receipt of short term disability
          benefits does not automatically mean that your long term
          disability claim will be approved. Long term disability
          coverage differs from short term disability coverage. Your
          claim will be subject to the policy provisions in your long term
          disability policy.

5.   Plaintiff's employer, UBS AG, completed a Educational Employment      29-31
     History Form and provided it to Unum.  In that form, UBS AG
     indicated that plaintiff's position was as a "Customer Service
     Representative." His annual salary was $60,000. In his job he used
     a  computer server with different softwares. His job duties involved
     speaking "to customer and solve their banking problem in four
     different languages."  The physical requirements of his position were
     "Keen eyes with ability to quickly recognize problem and solve them
     using banking laws and regulations."

6.   On August 22, 2000, Balboni wrote to plaintiff and indicated her      36-37
     previously unsuccessful efforts to contact him.  She enclosed an
     Attending Physicians Form for plaintiff to provide to his doctor for
     completion and submission to Unum.

7

7.    On August 29, 2000, Balboni spoke with plaintiff and she placed a          39-45
      memorandum of their conversation in his file.  In their conversation,
      plaintiff acknowledged receiving hers of August 22, 2000.  Further,
      he told her that his eye symptoms began in January 1997 with an
      accident at work.  There was construction being done and debris fell
      into his left eye. He had hired a workers' compensation attorney and
      was denied workers' compensation benefits.

      He stated he had undergone 5 surgeries on his left eye, the last one
      in April of 2000.  His left eye burns and is sensitive to light, and he
      also "has problem with right eye as well."   Plaintiff told her that he
      has eye drops in left eye three times a day; 3 types of drops. He
      also takes one drop for right eye. "Takes Tylenol for headaches."

      Plaintiff described his activities of daily living.  He

            stays inside. Closed windows. Can't drive. # months behind
            on bills. Father helps when he can't. He lives alone. Vision
            blurry out of left eye. Wears a patch when pain is
            bad–Approximately 2 days/week. When pain is bad, eye
            waters and needs to stay in bed. Attorney Fox is his workers
            comp attorney.

8

8.    Unum received a Job Analysis from Ruth Ann Shay, Director UBS        47-50
      Warburg, dated September 12, 2000.  In that Analysis, Ms. Shay
      stated that plaintiff's job title was "Customer Service
      Rep/Investigator."  The minimum qualifications for that position were
      "Language skills, PC applications ability, telephone skills."  As a
      Customer Service Rep/Investigator plaintiff deals "with customer
      inquiries regarding US dollar payments, queries received by a
      telephone electronically or manually."  The Material Job Tasks were
      "Answering telephone inquiries, 1.5 hours/day. Settling inquiries
      using electronic methods, 5.5 hours/day. No standing. An hour of
      walking. 6 hours of sitting....Fine manipulation of hands, 1.5
      hours/day–right hand, 5.5 hours/day–both...working with others,
      alone, apart or in physical isolation; comprehending and following
      instructions; performing simple and repetitive tasks, complex or
      varied tasks requiring higher levels of reasoning, language or math,
      and working under deadlines; performing varied work tasks with
      frequent interruptions; dealing with angry, upset, and combative
      public; making generalizations, evaluations or decisions without
      immediate supervision; performing when confronted with
      emergency, critical, unusual or dangerous situations and sustained
      attention to complex tasks.

      Ms. Shay wrote, "We have changed Ernst's seat to a spot with better
      lighting and less overhead glare. We have also tried to increase the
      font size on his computer as much as possible."

9

9.    On August 16, 2000, Balboni wrote a memo to the file:          51

Medical records are necessary before review can be done. However, file lacks authorization form to request meds. File contains authorization. However, claimant was put on 30 days notice to provide attending physicians statement and required Section E attachments on 8/22/00–as of 8/25/00 information hasn't been received. Telephone call with claimant done 8/29/00; LTD claim is being denied at present under Notice and Proof. Claimant was sent letter on 8/22/00 requesting Attending Physicians Statement and required Section E attachments with 30 days to provide information. However, as of 9/25/00–no additional medical information has been provided. Therefore, because claim can't be pending indefinitely, claim is being closed. If additional medical info is received, info will be reviewed to determine whether claimant meets definition of disability under policy provisions.

10.    On September 25, 2000, Balboni wrote to plaintiff that:          52-53

Enclosed you will find a copy of a letter we sent you concerning Unum Disability Benefits. We advised you in that letter that we needed to receive proof of your disability within 30 days of our request. Since we have not received the requested information within the specified time period, we are closing your file in accordance with the following policy revision:

"Notice & Proof of Claims...Proof of continued disability and regular attendance of a physician must be given to the Company within 30 days of the request for the proof...."

If you are still interested in pursuing your claim for disability benefits, please provide us with the necessary information immediately to support your claim.... If First Unum does not receive your written appeal within 90 days of the date of this letter, our claim decision will be final. If the information we receive does not enable us to alter our determination, we will forward your file for an independent, impartial and final appeal review.

10

11.  Balboni attempted thereafter to contact the plaintiff by telephone but was unable to reach him or to leave a message for him.    54

12.  Commencing the end of December, 2000, plaintiff began to contact Unum regarding his claim for benefits.    58-67

13.  Unum assigned another Disability Benefits Specialist, Kathleen Reid, to the plaintiff's file in January, 2001.    73-78

14.  Reid spoke with plaintiff on January 18, 2001.  In that conversation he told her that  "he has seen a retina specialist 3 times. They have put him on a lot of meds. This is the least amount of pain he has been in for months and it is only now that he can attend to these issues"  In turn, Reid told plaintiff that the "burden is on him to provide proof of disability. Then is contractual issue of whether or not he is disabled."    71-72

15.  Reid spoke with plaintiff on January 22, 2001.  She told him that although she previously had received office notes from Dr. Swerdin, plaintiff's attending physician, she had not gotten an Attending Physician's Statement from Dr. Swerdin.  "Claimant said he was never given a form. Told him the file is documented several times this was sent to him. No form = no review. He told me to follow-up with Dr. Swerdin–told him I will fax the form to Dr. Swerdin, but it is up to him to have Dr. Swerdin respond. Told him when I receive the form, I will call him.    82

16.  Reid faxed the Attending Physician's Statement to Dr. Swerdin on January 22, 2001.    83-84

17.  On January 25, 2001, Reid received a fax from Dr. Swerdin's office that "Dr. Swerdin will not fill out any more forms. Faxing letter."    91

18.    Thereafter, Dr. Swerdin sent Unum a hand written letter in which he     92
        wrote:

>    Ernst Dorcely is a 38 year old male who has a past ocular
>    history of trauma to the left eye with cataract removal and
>    posterior chamber intraocular lens implant back in January
>    2000. He has been followed at my office since February
>    2000.
>
>    <u>Medical Records Summary from February 2000 to Present:</u>
>    Mr. Dorcely has at least 20/40 vision right eye with 20/200
>    vision left eye. The right eye exam is normal. However, in the
>    left eye he has been treated for retinal edema, residual iritis
>    and glaucoma in the left eye causing decreased vision and
>    glare.
>
>    <u>Activities He Can and Cannot Do:</u>
>    Due to decreased vision in the left eye it may be difficult to
>    perform extensive reading or viewing of a computer screen.
>    Based on his visual acuity, most physical activities could be
>    performed except for operating machinery which can pose a
>    risk.
>
>    <u>Treatment Plan:</u>
>    Mr. Dorcely is taking 3 different eyedrops in the left eye.
>    Voltaren twice a day, Alptoyen twice a day, and Timoptic XE
>    once a day. He will be rechecked March of 2001. At this time
>    it is possible the decreased vision in the left eye may be
>    chronic without any improvement. In 3 months vision will be
>    reevaluated.

19. Unum requested that its vocational consultant conduct a vocational review of the plaintiff's position as it existed in the national job market.  On January 29, 2001 it received a response from Douglas Palmer, MS, CRC.  In it, Palmer wrote: 　　　　　　　100

> The material duties of occupation of Wire Transfer Clerk include transferring funds or securities and maintains records of transactions using computers. The physical demands for this occupation are considered sedentary with occasional lifting up to 10 pounds, frequent fingering, occasional reaching and handling, and sitting up to 2/3rds of the time. In regards to the visual requirements for this occupation, the Dictionary of Occupational Titles reports that frequent near acuity is needed, which is defined as clarity of vision at 20 inches or less.

20. On February 8, 2001, Unum's medical consultants, Maliea Brackett, RN and Ann Pidgen, RN , completed a review of the medical information contained in the plaintiff's file. In part, they wrote 　　101-102

> Clinical Findings: Has history of trauma to left eye. January '00 cataract removal and posterior chamber intraocular lens imprint left eye. As of 2/29/00, visual acuity showed 20/50 in right eye and 20/80 in left eye. As of 12/15/00 visual acuity shows 20/50 in right eye and 20/80+ in left eye.
>
> Narrative of 12/26/00: Attending Physician indicates 20/40 in right eye and 20/200 in left eye.
> Claimant presently on Voltaren, Alphagan, and Timoptic XE.
>
> Restrictions and Limitations: Restrictions are extensive reading or viewing of computer screen. Limitations are operating machinery.
>
> Conclusion: The available medical information provided from 2/29/00-12/26/00 does not indicate significant change in claimant's condition, nor would I expect claimant to be totally impaired based on review of these medicals.

13

21.    Unum also requested that a physician review the medical                102
       information in the plaintiff's file.  On February 16, 2001, Lawrence
       Broda, MD, wrote:

           While claimant has decreased vision, left eye, albeit
           unreliable exams, should be able to read with normal right
           eye and use computer screen. If problems are biocular vision
           because of differences between eyes, could use patch to be
           able to focus with one eye. No need for prior records following
           discussions.

14

22.  Dr. Broda's February 16 report was based on a telephone call he          103-104
     had on February 14, 2001 with plaintiff's attending physician, Dr.        105-106
     Michael Swerdin.  Dr. Broda's notes of the two physicians'
     conversation contain the following notes:

          Analysis of data and restrictions and limitations: "Inconsistent
          visual acuities and unknown preoperative visual occuity."

          Clinical Findings: History of unspecified eye trauma 1997.
          Lens implant following cataract extraction 01/20/00 by
          Sanjeev Nath, MD. Subsequently followed by Michael
          Swerdin, MD. Phone call to Dr. Swerdin to clarify eye
          findings. Claimant does have evidence of prior left eye
          trauma and surgery, residual retinal edema and iritis of
          uncertain duration. His eye exams have been unreliable. His
          right eye vision is diminished by eye testing (not totally
          objective-patient can influence) but his right eye appears
          normal, raising question of patient reliability. Dr. Swerdin can't
          determine if vision changes [are] real based on patient
          reliability and has been unable to obtain records from Dr.
          Nath to see what was his previous vision. Office visit 12/29/00
          reveals uncorrected acuity 20/50 right and 20/80 left with
          refraction. Visual acuity 20/30 right and 20/50 left with
          questionable reliability. Vision of office visit 12/15/00
          uncorrected was 20/60 right and 20/100 left by technician,
          and when refracted with Dr. Swerdin 20/40 right and 20/200
          left which is inconsistent.

          Next Steps: Obtain preop visual acuity from Dr. Sanjeev Nath,
          MD.

23.    On or about February 16, 2001, Douglas Palmer, Unum's vocational    109
       consultant, spoke with Dr. Broda.  Thereafter, he prepared an
       addendum dated February 16, 2001 to his January 29 report in
       which he wrote:

           Based on discussion with Broda, it would appear reasonable
           that an individual with loss of vision in one eye would learn to
           accommodate vision with the other eye that would enable
           him/her to be able to perform the material and substantial
           duties of this occupation that would require frequent near
           acuity with monocular vision.

24.  On February 16, 2001, Unum wrote to plaintiff to inform him that it       114-116
     was denying his claim and to explain the basis of that decision.  In
     part, Unum wrote:

> Your claim for LTD benefits was originally denied on 9/25/00
> for failure to provide proof of disability. On 1/19/01, we
> received office notes from Dr. Swerdin and on 01/25/01 we
> received a disability statement from him. Dr. Swerdin
> documented that he has tried without success to obtain
> medical information from your prior doctor documenting your
> condition and treatment prior to his treatment. Based on this it
> is unclear for how long you have had retinal edema and iritis
> and whether or not you were able to work with your conditions
> previously.

> Your visual acuity has been tested during each office visit
> with Dr. Swerdin, and he has documented the unreliability of
> your answers. Specifically, on 12/15/00, your uncorrected
> vision of 20/60 in your right eye and 20/100 in your left eye.
> With refraction, your right improved to 20/40 however, your
> left eye worsened to 20/200 which is inconsistent.

> At this time, we have no objective evidence to support you
> have any restrictions or limitations regarding your right eye.
> Again, due to the fact there is no medical in the file prior to
> 2/29/00, there is no indication when the retinal edema and
> iritis developed in your right eye. Furthermore, we have
> reviewed your occupation prior to your disability and have
> determined that you are performing the material duties of a
> Wire Transfer Clerk (DOT # 203.562-010) which does require
> frequent near acuity. However, it is reasonable that with a
> reported loss of vision in one eye, an individual could
> accommodate their vision to perform the material duties of
> this occupation.

> Therefore, at this time, we do not have objective evidence to
> support you would have restrictions and limitations due to
> your eyesight that would prevent you from performing the
> material duties of your regular occupation. We are denying all

17

liability as of the date of this letter and no benefits will be payable to you.

If you have new, additional information to support your request for disability benefits, please send it to my attention at the address noted on this letterhead.

25. On Feburary 19, 2001, Reid spoke with the plaintiff by telephone to explain Unum's decision.  In a memo summarizing the substance of that telephone call, she wrote:                                                    119-120

> Called claimant back and explained denial of claim. Reviewed medicals submitted and inconsistencies and explained we would expect he could do his own occupation with right eye if he did have objective evidence of restrictions and limitations with his left eye. He says he tried to do his job for three years and got poor evaluations. He thought they were going to fire him. The speed was no longer there. Supervisor told him to get further medical follow-up, which was further surgery. Pain has been unbearable. Technical job he was doing, made decisions in lending and correct problems, that is very very technical. Could not do job.  Left eye is for short vision, right eye is for long vision. Has had 4 operations of his left eye. Job contributed to my problem. Has had fluid at back of left eye and has had 5 operations on left eye. $50,000 for additional surgery. His eye does not compensate as he did not loose left eye. He is going to get a lawyer and sue. He asked if we had info from surgeon who did surgeries. No. He asked if we had info from specialist. No. He said he will have both send info and will appeal decision.

18

26.  On February 22, 2001 plaintiff appealed Unum's decision by          122-129
     facsimile with attachments.  On the cover sheet, plaintiff wrote, "I am
     appealing latest decision on my claim and request immediate
     payment. I am submitting further particulars. However you should
     contact doctor or doctors for more if needed."

     Along with that cover sheet, plaintiff submitted:

     •      a statement "as of" December 16, 1999 of payments made by      128
            Connecticut General Life Insurance Company for "outpatient
            services" that Dr. Sanjeev Nath provided on 12/1/99;
                                                                           127
     •      a bill from New York Eye and Ear Infirmary dated 10/17/00
            indicating a payment of $173.25 for services provided on
            6/17/99;                                                       126

     •      A statement from Connecticut General Life Insurance
            Company "as of" September 20, 2000 regarding services Dr.      125
            Edward Stroh performed on 9/8/00;

     •      A statement from Connecticut General Life Insurance            124
            Company "as of" October 12, 2000 that indicates that Dr.
            Roger Lash provided "assist surg outpat" services to plaintiff
            on 6/17/99;

     •      A statement from Connecticut General Life Insurance
            Company "as of' October 23, 2000, that indicates that Dr.
            Sanjeev Nath provided outpatient surgery on 6/17/99.

27.  Plaintiff had not as of February 22, 2001 provided Unum with any
     medical reports or information from any physician mentioned in
     his"appeal," nor did he in that "appeal" provide Unum with any
     medical information from any physician whatsoever.

19

28.  On February 24, 2001, Reid wrote to plaintiff that, "We have          130
     received your request for an appellate review. As you have not
     submitted any new medical information, this request and your claim
     file have been sent to Quality Performance Support Unit for
     completion of the appellate review."

29.  On March 2, 2001, Ronald Hamel, Senior Appeals Specialist in         131
     Unum's Quality Performance Support Unit acknowledged plaintiff's
     request for appeal.

30.   On March 16, 2001, Hamel wrote to plaintiff to indicate Unum had          133-134
      completed its review of the denial of benefits and determined that
      the decision to deny the claim was appropriate.  In part, Hamel
      wrote:

              According to the policy under which you are covered:

              "Disability" and "disabled" mean that because of injury or
              sickness:
              1) the insured cannot perform each of the material duties of
              his regular occupation; and
              2) after benefits have been paid for 24 months, the insured
              cannot perform each of the material duties of any gainful
              occupation for which he is reasonably fitted by training,
              education or experience.

              Since you have not submitted any new medical information
              for your appeal, this decision is based on a thorough review
              of the information currently in your file.

              As outlined in your previous correspondence to you dated
              2/16/01, the objective medical evidence does not support that
              you are incapable of performing the material duties of your
              regular occupation.

              The medical records from Dr. Swerdin indicate that you have
              a history of eye trauma to the left eye with cataract removal
              and insertion of an intraocular lens implant.  Your left eye has
              been treated for retinal edema, residual iritis and glaucoma.
              On examination, your right eye is normal.

              On 12/15/00, Dr. Swerdin performed an eye examination
              which revealed inconsistent visual acuities and he noted that
              you provided unreliable answers for determining best
              corrected visual acuity. In his report dated 12/26/00, Dr.
              Swerdin indicated that the vision in your right eye is at least
              20/40 with 20/200 vision in the left eye. There are no
              restrictions or limitations regarding your right eye.

21

|  | We have reviewed the physical requirements of your occupation and have determined that your duties do require near visual acuity. However, the loss of visual acuity in one eye should not preclude you from accommodating your vision to perform the material duties of your occupation. Accordingly, we have determined that you are not eligible for disability benefits. | 133-134 |
| 31. | On April 24, 2001, Hamel wrote a memo to the file to summarize a telephone call he had that date.  Hamel wrote, "Call to Attorney Fox. Fox said he is handling a personal injury suit for claimant and was only recently made aware of claimant's disability claim. He has additional medical to submit. I told him to submit a letter of representation with medical info for our consideration." | 136 |
| 32. | On May 1, 2001, Hamel wrote to Atty. Fox acknowledging receipt of his letter requesting an additional review of plaintiff's claim. | 137 |
| 33. | By letter dated April 25, 2001, Atty. Fox provided additional medical information to Unum. | 138-185 |
| 34. | Atty. Fox' April 25 letter included a letter to him dated February 22, 2000 from Dr. Sanjeev Nath, in which Dr. Nath wrote "...Patient's vision at this time is fluctuating between 20/25 and 20/50 and this may be related to leakage of fluid in the macula. This is a frequent occurrence in patients with chronic, recurrent inflammation and certainly is aggravated by inadequate usage of steroid medications to control inflammation...." | 179-184 |
| 35. | Atty. Fox' April 25 letter also included a letter to him dated December 21, 1998 to him from Leslie Eisner, M.D., in which Dr. Eisner wrote, "First seen in office 01/26/98 complaining of 2 week history of redness and light sensitivity in left eye. Did not admit to any past ocular problems or recent history of trauma. Examination at the time revealed best corrected vision of 20/15 in right eye and 20/80 in the left. received treatment 021/29 and 2/29 and was lost subsequently to follow-up. | 158-159 |

22

36.  Atty. Fox' April 25 letters included letters from Dr. Frantz Lerebours:  148

   •   Dated April 4, 1998 in which Dr. Lerebours wrote," He has  146
       been in treatment from 2/17/98 for uveitis left eye. His
       condition has not improved significantly and requires frequent
       application of eye drops. At this point, he is not fit for duty."

   •   Dated April 13, 1998 in which he wrote "Mr. Dorcely has been  142
       under my care since 2/17/98 for severe uveitis left eye. Mr.
       Dorcely's condition is very serious and will result in
       permanent damage to his left eye if not complete loss of
       vision. At this point, Mr. Dorcely is severely impaired and is
       not fit for duty."

                                                                    140

   •   Dated April 2, 1998 in which he wrote, "Mr. Dorcely's
       condition has not improved significantly, he still requires
       frequent application of eye drops. At this point he is not fit for
       duty."                                                       139

   •   Dated April 16, 1998 in which he wrote, "Mr. Dorcely's
       condition is very serious and will resort in permanent damage
       to his left eye. At this point, he is not fit for duty."

37.  On May 1, 2001, Hamel wrote to Atty. Fox to inform him of Unum's     186
     determination on the plaintiff's application for benefits.  In part,
     Unum wrote:

     > We have reviewed the additional medical information you
     > submitted on behalf of your client. The information submitted
     > consists of an emergency room visit on 01/26/98, records
     > from Frantz Lerebours, M.D. for the period of 2/17/98 to
     > 4/30/98, records from Leslie Eisner, M.D. for the period of
     > 01/26/98 to 2/9/98 and records from Sanjeev Nath, M.D. for
     > the period from 6/5/99 to 2/16/00.

     > Mr. Dorcely is claiming to be totally disabled since 2/29/00.
     > The policy under which he is covered has a 180 day
     > elimination period and he would not have been entitled to
     > disability benefits until 8/27/00. The medical information
     > referenced above predates his claim and provides no
     > information regarding your client's functional capacity at the
     > time he might have become entitled to benefits.

     > After further review, we find that our previous decision to deny
     > benefits was correct and we are upholding that determination.
     > This represents the final review of your client's file, and
     > therefore, all administrative remedies in regard to Mr.
     > Dorcely's appeal and re-appeal for disability benefits have
     > been exhausted.

38.  The Policy states that a person covered by its terms suffers from a    301
     "disability" or is "disabled" because of injury or sickness if:

     1.  the insured cannot perform each of the material duties
         of his regular occupation; and

     2.  after benefits have been paid for 24 months, the
         insured cannot perform each of the material duties of
         any gainful occupation for which he is reasonably
         fitted, taking into consideration training, education or
         experience, as well as prior earnings.

39.   The Policy defines "Injury" as "bodily injury resulting directly from an     304
      accident and independently of all other causes."

40.   The Policy defines "Sickness" as "illness or disease."     303

41.  UBS AG prepared and distributed an Employee Handbook to its          Attached
     employees which in summary fashion described the terms of the
     Plan.  The court determines that the "Employee Handbook" is a
     Summary Plan Description for purposes of ERISA.  The version of
     the Summary Plan Description in effect when the plaintiff claimed to
     have become disabled contains the following language regarding the
     Policy:

          The insurance carrier, UNUM, will determine whether you're
          disabled for plan purposes.  In order for the payments to
          continue, you may be required to furnish proof of your
          continuing disability and show that you're under the direct
          care of a licensed physician.

     *          *          *          *          *          *

          The insurance carrier, UNUM, will provide you with the LTD
          form to apply for benefits if you're on an approved STD and
          are nearing the 26-week maximum STD benefit.  You must
          return this form to the insurance carrier.  UNUM will transfer
          you from STD coverage to LTD coverage if it determines that
          you continue to be disabled after 26 weeks and your disability
          is approved by UNUM....You must give proof, at your own
          expense, that you're disabled....

     *          *          *          *          *          *

          LTD benefits, like Life Insurance and Accidental Death and
          Dismemberment Insurance, are provided through an
          insurance policy to which the Bank and employees make
          premium payments.  **Although the Bank is the Plan
          Sponsor of the LTD Plan and makes it available to
          eligible employees, the insurance company, UNUM, has
          the sole authority to interpret and construe the terms of
          the insurance policy (which are described generally
          herein) and determine whether benefits are payable**---
          UNUM also has the sole responsibility for making any

                              26

disability benefit payments.

## PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW

1. That the denial of payment of long term disability benefits was a violation of the terms of the disability insurance contract and constitutes a breach of the contract

2. Plaintiff is entitled to payment of disability benefits from April 25, 2000 to the present and for so ling as he remains disabled.

## DEFENDANTS' PROPOSED CONCLUSIONS OF LAW

1. This court has jurisdiction over the plaintiff's complaint pursuant to the provisions of the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §1001 *et seq*. as the dispute arises out of an employee welfare benefit plan, 29 U.S.C. §1002(1).

2. Prior to February 22, 2000, plaintiff was actively employed by UBS AG its Stamford, Connecticut facility.

3. At all relevant times, UBS AG provided its employees, including the plaintiff, with long-term disability insurance covered under a policy (the "Policy) issued by First Unum Life Insurance Company ("Unum").  The Policy is a part of an employee benefits plan governed by ERISA.  (The "Plan").

4. Unum is the administrator of the Policy.

5. Under the Supreme Court decision in Firestone Rubber Company v. Bruch, 489 U.S. 101, 115 (1989), a decision of an ERISA appeals committee is to be reviewed *de novo* unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

6. Unum claims that the language of the Plan grants it discretionary authority to determine eligibility for benefits and to construe the Policy's terms.  Therefore, Unum bears the burden of proving that the arbitrary and capricious review applies, since the party claiming deferential review should prove the predicate that justifies it.  Sharkey v. Ultramar Energy, Ltd., 70 F.3d 226, 230 (2d Cir. 1995).

7.    The Plan states that, "UNUM, has the sole authority to interpret and construe the terms of the insurance policy (which are described generally herein) and determine whether benefits are payable."  This language is sufficient to invoke a court's deferential review of Unum's decision.  Maniatty v. UnumProvident Corporation, et al., 218 F.Supp. 2d 500 (S.D.N.Y. 2002), aff'd, 62 Fed. Appx. 413, 2003 U.S. App. LEXIS 9383, cert. den. __ U.S. __, 157 L. Ed. 2d 310, 124 S. Ct. 431, 2003 U.S. LEXIS 7719, 72 U.S.L.W. 3280 (2003)(construing language from the same plan and policy and issued by the same employer as in this case); see also, Pulvers v. First Unum Life Insurance Company, 210 F.3d 89, 92 (2d Cir. 2000) (language granting administrator "discretionary authority to determine ... eligibility for benefits and to interpret the terms and provisions of the policy" is of a kind that "generally prompts the arbitrary and capricious standard of review."); Short v. Unum Life Insurance Company of America,  2003 U.S. Dist. LEXIS 22327 (D. Conn. 2003);  Rosenthal v. First Unum Life Insurance Co., 2002 U.S. Dist. LEXIS 8365, *15-*16 (S.D.N.Y May 9, 2002);  Kocsis v. Standard Insurance Company, 142 F.Supp. 2d 241,251-52 (D. Conn. 2001) (reservation of right to determine eligibility for insurance, entitlement to benefits, amount of benefits and sufficiency of amount of information triggers discretionary review.)

8.    When making a benefit determination under the Policy, Unum has discretionary authority to determine an applicant's eligibility for benefits and to interpret the terms and conditions of the Policy.  It therefore has sustained its burden of showing that the "arbitrary and capricious" standard applies to this court's review of its determination.

9.    Where the written benefit plan documents give the administrator discretionary authority to determine eligibility for benefits, a court will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious. Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995).

10.    In reviewing an ERISA claim in which the administrator's conduct is judged by the arbitrary and capricious standard, the court's examination of the facts of the case is limited to reviewing the administrative record compiled below. Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995).  In a deferential review case such as this, "a district court reviewing an ERISA denial of benefits is effectively functioning in an appellate capacity because it is precluded from considering new evidence" Larsen v. The Prudential Insurance Company of America, 151 F.Supp. 2d 167, 172 (D.Conn. 2001).  The scope of a court's review is "very narrow."  Celardo v. Greater New York Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003);

11.    A denial of benefits is "arbitrary and capricious" if the decision to deny benefits was without reason, was unsupported by substantial evidence, or was erroneous as a matter of law.  Pagan, 52 F.3d. at 442.  "Substantial evidence" means such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker; it requires more than a scintilla, but is less than a preponderance of the evidence. Kocsis, 142 F.Supp. 2d at 252.  "Where both the plan administrator and a spurred claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation **must** be allowed to control." Pulvers v. First UNUM Life Insurance Co., 210 F.3d 89, 92-93 (2d Cir. 2000)(emphasis added).

12.    Under the deferential standard, the court is "not free to substitute its own judgment for that of the plan's administrator as if it were considering the issue of eligibility anew."  Kocsis at 252.  Thus, the court may not upset a reasonable interpretation of the administrator.  Jordan v. Retirement Commission of Rensselear Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995).

13.    The court has reviewed the administrative record Unum prepared during its review of the plaintiff's claim and is satisfied that plaintiff has not sustained his burden of proof regarding disability.  Indeed, plaintiff's own attending physician, Michael Swerdin, M.D., called the reliability of the medical data he presented to Unum regarding plaintiff's physical condition into question.  In his last office note, Dr. Swerdin wrote, "unreliable answers for determining best corrected V[isual] A[cuity],"  (AR 073), and he told fact directly to Dr. Lawrence Broda, Unum's medical consultant.  (AR 105-08).

Further, even if plaintiff's vision in his left eye truly was decreased, he provided Unum with no objective information or evidence to show that because of his decreased ability to see through that eye he could not perform the material duties of his position.  As the medical and vocational consultants who reviewed the medical information on behalf of the administrator concluded,  even if plaintiff had a problem with visual acuity in his left eye, he could have placed a patch over that eye and still have been fully capable of performing his duties using only his right eye. (AR 109).  Indeed, the consultants determined that even if plaintiff had totally lost sight in his affected eye he still would have been able to perform the material duties of his position. Id.  The plaintiff has provided no countervailing or contradictory evidence.

As one court recently noted, a claimant's own assessment of his own capacities is not a sufficient basis on which to ground a claim for ERISA benefits.  Maniatty, supra.  In that case, the plaintiff claimed that the language of the policy itself did not require her to produce objective medical evidence of her disability and required Unum to credit her own statements of her disabilities.   The court, however, disagreed.  Commenting, Judge Rakoff held:

the very concept of proof connotes objectivity....It is hardly unreasonable for the administrator to require an objective component to such proof.  To hold otherwise, to require administrators to provide benefits based solely upon subjective complaints of claimants, without more, would result in insurance companies paying virtually all claims.

30

See also, <u>Coffman v. Metropolitan Life Insurance Co.</u>,  217 F. Supp. 2d 715, 732 (D. W.Va. 2002); The First Circuit is in accord with the Second Circuit on this point.  <u>Boardman v. The Prudential Life Ins. Co. of America</u> , 337 F.3d 9 (2003), as are many other courts throughout the country.  See, e.g. <u>Wertheim v. Hartford Life Insurance </u>Co., 2003 US. Dist. LEXIS 10807 (E.D. Va. 2003); <u>Williams v. Unum Life Insurance Company of America</u>, 250 F. Supp. 2d 641, 648 (E.D. Va. 2003); <u>Martin v. Continental Casualty Company</u>, 96 F. Supp.2d 983, 992-94 (N.D. Cal. 2000).

14.     Trustees of ERISA benefit plans are required to maintain and preserve their plan's assets, not to waste them.  See, e.g. <u>New York State Teamsters Conference Pension and Retirement Fund v. Boening Brothers, Inc. et al.</u>, 92 F.3d 127, 131 (2d Cir 1996); see also, <u>Central States, Southeast & Southwest Areas Pension Fund et al. v. Central Transport, Inc.</u>, 472 U.S. 559, 572 (1985).  Requiring a level of objective proof to support claimed restrictions and limitations is consistent with the duties and responsibilities of a claims administrator.  The Court will likewise apply that standard to this case.

15.     Below, plaintiff submitted **no** reliable objective evidence that in February 2000
         he was unable to perform any material duty of his regular occupation on
         account of injury or sickness.  The testing performed by Dr. Swerdin, plaintiff's
         own doctor, suggests that plaintiff may have been malingering.   At best, the
         test results were inconsistent, suggesting that plaintiff may have intentionally
         over-stated his condition.

         Dr. Broda reviewed the medical records Dr. Swerdin provided and in February
         2001 observed that:

> Dr. Swerdin can't determine if vision changes [are] real based on
> patient reliability and has been unable to obtain records from Dr. Nath
> to see what was his previous vision. Office visit 12/29/00 reveals
> uncorrected acuity 20/50 right and 20/80 left with refraction. Visual
> acuity 20/30 right and 20/50 left with questionable reliability. Vision of
> office visit 12/15/00 uncorrected was 20/60 right and 20/100 left by
> technician, and when refracted with Dr. Swerdin 20/40 right and 20/200
> left which is inconsistent.

         (AR 103-04).  He then spoke personally with Dr. Swerdin, and heard Dr.
         Swerdin conclude that:

> His [plaintiff's] eye examinations have been unreliable. His right eye
> vision is diminished by eye testing which has been compromised by
> patient reliability.  This is in the face of what appears to be a totally
> normal right eye exam raising questions of patient reliability.  In
> addition to this, on 1/15/00, the claimant had uncorrected vision that
> was better than his refracted vision.  Uncorrected vision on 12/14/00
> was 20/60 in the right eye and 20/100 in the left eye.  With refraction,
> the vision was 20/40 in the right eye, 200/200 in the left eye, again
> raising the question of patient reliability.  The fact that his corrected
> vision is worse than his uncorrected vision is inconsistent.

         (AR 108-09).

32

16.    Finally, Unum gave the plaintiff the benefit of the doubt and conducted a vocational analysis of his position.  It assumed that plaintiff suffered some loss of vision in his left eye, but based on its vocational analysis reasonably concluded that plaintiff, **even if he were blind in one eye**, could have continued to perform the material duties and responsibilities of the position which he held on February 29, 2000.  Id.

17.    Below, the plaintiff did not contest this assessment.  Nothing that plaintiff's former employer provided during the claims process contradicted this assessment.

18.    Based on all the information in the file, the court has determined that the plaintiff has not satisfied his burden of proving disability.  Judgment therefore shall enter for the defendant confirming its administrative determination, and the clerk is directed to close this file.

**(11)    ANTICIPATED EVIDENTIARY PROBLEMS:**

N/A

RESPECTFULLY SUBMITTED,

ERNST DORCELY                    FIRST UNUM LIFE INSURANCE COMPANY

BY:    _____          _____
       Mark J. Fox, Esq.                  Alexander H. Schwartz, Esq. (CT 05773)
       125 Elm Street                     3695 Post Road, Suite 203
       New Canaan, CT    06840            P.O. Box 701
       (203) 972-3301                     Southport, CT 06890
       (203) 972-3328 (fax)               (203) 255-9829
       MJFOXLAW@aol.com                   (203) 255-9839 (fax)
                                          alex@ahschwartz.com

                              33