UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERNST DORCELY, | : | CIVIL ACTION NO: |
|    Plaintiff, | : | |
| | : | |
| V. | : | 3:03 CV 114 (AVC) |
| | : | |
| FIRST UNUM LIFE INSURANCE COMPANY, | : | |
|    Defendant. | : | JULY 16, 2004 |

**DEFENDANT'S RESPONSIVE MEMORANDUM IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

The defendant, First Unum Life Insurance Company ("Unum"), submits this Memorandum of Law in response to the plaintiff's July 7, 2004 submission and in support of its June 15, 2004 Motion for Judgment on the Administrative Record.[1]

**1.  SUMMARY OF THE PARTIES' POSITIONS**

Unum submitted its Motion for Judgment on the Administrative Record, arguing that an examination of the record that it prepared and maintained in analyzing the Plaintiff's long term disability application would lead the Court to the inescapable conclusion in this case[2] that the plaintiff had failed to sustain his burden of proving that

---

[1] By order dated April 25, 2003, the Court without prejudice denied Unum's prior Motion for Judgment on the Administrative Record because Unum had not submitted proposed Findings of Fact and Conclusions of Law.  Unum has filed proposed findings and conclusions in conjunction with the parties' Joint Trial Memorandum and also its June 14 Motion for Judgment on the Administrative Record.

[2] Plaintiff does not disagree that the Court is required by the terms of the Plan under which he claims benefits to apply the heightened, "abuse of discretion" standard

1

he was disabled under the terms of the policy Unum issued to USB AG, the plaintiff's employer.[3]

Unum pointed the Court to several factors that supported its decision, none of which are individually determinative of its decision.[4] First, Unum noted that the plaintiff's treating physician, Dr. Swerdin, did not indicate in any report or record that the plaintiff was unable to perform the material duties of his regular occupation. Indeed, Unum demonstrated that Dr. Swerdin found plaintiff's own statements of his ability to see out of both eyes to be "unreliable," thereby decreasing any credibility his claim theoretically might otherwise have had. See, Unum's June 5 Memorandum of Law at pp. 20-21; 22-23 ("Unum's Memo"). Next, Unum explained that it gave the plaintiff the benefit of the doubt during the claims process and had an independent vocational review conducted of his job functions. That review indicated that even if the plaintiff

---

to Unum's administrative determination.

[3] In the policy, "Disability" and "disabled" mean that because of injury or sickness: 1) the insured cannot perform each of the material duties of his regular occupation; and 2) after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience. (AR 30)

[4] The administrative record demonstrates that Unum initially denied plaintiff's application for benefits because he failed to provide Unum with appropriate medical documentation to support his claim. (AR 052-53). Even though plaintiff had been procedurally deficient in pursuing his claim, Unum nevertheless permitted him to remedy that default and submit medical information. Unum's ultimate denial of plaintiff's claim was therefore not based on procedural grounds but, rather, on the fact that the medical information plaintiff submitted did not establish that he was disabled.

2

were blind in one eye, he still should have been able to perform the functions of his job as it is described in the national economy. Unum's Memo at p. 5-8. In sum, therefore, Unum submitted that in examining the facts and applying them to well-established precedent in this Circuit, the Court must uphold its administrative decision.

Plaintiff's opposing memorandum appears to raise several points. First, plaintiff claims that since Unum granted plaintiff short term disability benefits, its decision to deny him long term benefits was incorrect because "objectively nothing has changed and the plaintiff remains disabled." Plaintiff's Memorandum at p. 1. Next, plaintiff seems to argue that Unum should have credited the opinion of Dr. Swerdin over that of its own medical reviewers, and thus its decision should be overturned. Plaintiff's Memo at p. 2. Then plaintiff claims that Unum was in error by failing to credit his own, subjective assessment of his abilities, and, finally, that because Unum never itself tested plaintiff's capacities or sent him for an independent medical examination, it did not perform a sufficient investigation of his claim and, concomitantly, abused its discretion when it denied his claim. Unum will address each point *seriatim*.

## 2. PLAINTIFF'S OPPOSITIONS ARE FACTUALLY AND LEGALLY INSUFFICIENT TO OVERCOME UNUM'S MOTION FOR JUDGMENT

### A. Receipt of Short Term Disability Benefits Does Not Equate to an Automatic Entitlement to Long Term Disability Benefits Under the Policy

On August 16, 2000, Tracy Balboni wrote to plaintiff to notify him that Unum's Long Term Disability Unit had received his application for benefits from its Short Term Disability Unit. In pertinent part, Ms. Balboni wrote:

> Please note that receipt of Short Term Disability benefits does not automatically mean that your Long Term Disability claim will be approved. **Long Term Disability coverage differs from Short Term Disability coverage. Your claim will be subject to the policy provisions in your Long Term Disability policy.**

(AR 020)(Emphasis added). Throughout the remainder of the plaintiff's application for long term disability benefits, Unum utilized the definition of disability found in the long term disability policy at issue. It applied that definition to review the plaintiff's application and it utilized that definition in communicating its determinations on the plaintiff's application. Nowhere in this process did Unum mis-apply the definition of long-term disability. Since Unum applied the proper standard, its decision to provide plaintiff with limited, short term disability benefits is factually and legally irrelevant to the Court's analysis of its decision on plaintiff's application for long term disability benefits.[5]

---

[5] Short term disability, by definition, applies to an extremely short period at the outset of the claimed period of disability. Long term disability applies to each of numerous monthly periods thereafter. Unum certainly had more time to consider and evaluate the long term disability claim than it did the short term claim. Nothing in

4

### B. "Things" "Changed" Dramatically While Plaintiff's Application Was Pending

Plaintiff seems to claim that Unum's short term disability benefit decision should be relevant to the Court's inquiry because "nothing has changed" between Unum's short term disability decision in May 2000 (AR 015) and May 2001 when it rendered its final decision on plaintiff's long term disability application. (AR 186). With respect to plaintiff, the factual landscape of the claim below changed dramatically over that one year period. Unum's understanding of plaintiff's medical condition and its ability to assess his condition in light of the definition of disability under the policy changed drastically.

For instance, Unum learned that:

- Dr. Swerdin, plaintiff's treating physician, did not believe and did not provide a medical opinion that plaintiff was unable to perform each of the material duties of his occupation;

- Dr. Swerdin believed that plaintiff was intentionally over-stating his symptoms;

- Dr. Swerdin had asked plaintiff to obtain medical records from his prior treating physicians and plaintiff repeatedly had failed to do so;

---

ERISA permits an administrator to pay a long term disability claim "just because" it paid a short term disability claim. Rather, ERISA requires the administrator to administer the plan in accordance with its terms.

5

- When Unum obtained records from plaintiff's prior physicians, it found that one of plaintiff's earlier treating physicians had tested plaintiff's visual acuity shortly before plaintiff transferred his treatment to Dr. Swerdin and in that test plaintiff's vision was much better than he reported it to be to Dr. Swerdin very shortly afterward;

- A vocational analysis of plaintiff's occupation in the job market indicated that he should have been able to perform the material duties of that occupation even if he had lost all sight in his affected eye.

These were critical factors in Unum's analysis of plaintiff's claim, its understanding of his condition, and its ability to properly assess that condition.[6] During the claim's pendency, Unum gained the necessary facts fully to analyze plaintiff's application and to make an informed decision using the disability definition contained in the policy. In short, it gained the ability, like Dr. Swerdin, to understand that plaintiff's claim might have been motivated by factors other than his ability to see, such as his efforts to protect himself from an inevitably adverse job decision. (AR 119-20).

---

[6] Pages 001 - 015 in the administrative record contain information Unum had available when it made its short term disability decision. Unum compiled the remaining 306 pages of the administrative record, and the information in those pages, solely during its long term disability review. To say that "nothing has changed" therefore ignores reality.

6

### C.   Even If Plaintiff's Treating Physician Offered an Opinion That Plaintiff Was Disabled, Which He Did Not, Unum Was Not Bound By That Opinion

Plaintiff additionally appears to argue that Unum's decision was wrong and therefore should be reversed, because "Dr. Swerdin confirms plaintiff's disabilities," and Dr. Swerdin's so-called "evident" refusal to sign a letter from Dr. Broda to him (AR 105-107) provides "no reason to believe its contents are accurate." Plaintiff's Memo at p. 2. Initially, Unum notes that Dr. Swerdin did not at any point state that plaintiff was totally disabled.[7] In December 2000, Dr. Swerdin actually stated the following:

> *Activities He Can and Cannot Do:*
> *Due to decreased vision in the left eye it **may be difficult** to perform extensive reading or viewing of a computer screen. Based on his visual acuity, most physical activities could be performed except for operating machinery which can pose a risk*

(AR 092)(Emphasis supplied). Plaintiff cannot seriously contend that this statement means that Dr. Swerdin said he was disabled.

Next, the fact that the administrative record does not contain a counter-signed version of Dr. Broda's letter is of no moment. That letter merely confirms the discussion between the two physicians. The discussion itself is detailed in the administrative

---

[7] The closest Dr. Swerdin came to this was in a Healthcare Provider's Statement dated July 24, 2000 in which he stated that plaintiff was disabled as of February 29, 2000 by "persistent iritis left eye with 20/50 left eye," and estimated that plaintiff would be able to return to work in December, 2000 (AR 008). Plaintiff continued to treat with Dr. Swerdin afterward, and it was during that treatment that Dr. Swerdin noted the "unreliability" of plaintiff's answers. (See AR 073-078).

7

record, (AR 103-04), and the opinions shared by the physicians in that discussion are based on and consistent with facts and observations contained in Dr. Swerdin's reports, which themselves are part of the administrative record. (AR 073 - 078). The absence of a counter-signed copy of Dr. Broda's letter is, in fact, more easily explained by Dr. Swerdin's reluctance to "fill out more forms" for a patient whom he does not believe, than it is by any inaccuracy or mis-statement of fact in that letter. (AR 091).

Further, the United States Supreme Court recently squarely addressed the "treating-physician" doctrine upon which plaintiff's argument appears to be based, and directly rejected it. In <u>The Black & Decker Disability Plan v. Nord</u>, __U.S.__, 123 S. Ct. 1965, 1972, 155 L. Ed. 2d 1034 (2003), the Supreme Court held that "courts have no warrant to require (ERISA) administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with the treating physician's evaluation." Therefore, even if Dr. Swerdin had given an opinion that plaintiff was disabled, which he did not, Unum would have acted reasonably **and lawfully** in not crediting that opinion since it would have stood in marked contrast to the observations and conclusions contained in Dr. Swerdin's own reports and records.

Contrary to plaintiff's argument, Unum actually did take his treating physician's opinion into account in making its decision on his application. Unum saw from Dr. Swerdin's records and reports that he did not find evidence of disability, and, based

8

on its review and analysis, Unum properly relied on that finding in determining that plaintiff's subjective assessment of his ability to see was "unreliable." (AR 114-116; 133-34). Thus, this is not a case in which Unum refused to credit the views of plaintiff's treating physicians. "To the contrary, Unum relied heavily on the numerous medical reports that the plaintiff's treating physicians had submitted or prepared." See, Short v. Unum Life Insurance Company of America, 2003 U.S. Dist. LEXIS 22327 *23 (2003), citing Maniatty v. UNUMProvident Corp., 218 F.Supp. 2d 500, 504 (S.D.N.Y. 2002),*aff'd* 62 Fed. Appx. 413, 2003 U.S. App. LEXIS 9383 (2d Cir. May 15, 2003). Its reliance on Dr. Swerdin's opinion was reasonable, responsible and appropriate.

Finally, plaintiff relies on Shutts v. First Unum Life Insurance Company, 310 F. Supp. 2d 489 (N.D.N.Y 2004) for the proposition that Unum failed to conduct a full and complete investigation of the plaintiff's claim and thereby abused its discretion when it denied plaintiff's application. Shutts, however, is unavailing. In that case, the district court determined that it would remand the claim to the administrator because the administrative record lacked an analysis of a critical factor in that case, i.e. a description of the duties and responsibilities of the plaintiff's position. 310 F. Supp. 2d at 500. Without that description, the court held that the administrator could not have assessed the essential issue in that case properly. In this case, however, Unum addressed all critical factors the plaintiff's claim presented by obtaining

9

medical records from the plaintiff's treating physicians, speaking with his principal treating doctor, examining medical records plaintiff's attorney provided to it, and assessing the physicians' conclusions in light of the description of the material duties and responsibilities of plaintiff's job description it obtained from its vocational expert. Unlike the administrator in <u>Shutts</u>, Unum in this case left no stone unturned during its analysis of the plaintiffs' claim.

### 3.   CONCLUSION

For these reasons and the reasons set forth in its opening Memorandum in Support of its Motion for Judgment on the Administrative Record, Unum respectfully requests that the Court enter an order affirming its administrative decision and dismissing the plaintiff's complaint.

> RESPECTFULLY SUBMITTED,
> FIRST UNUM LIFE INSURANCE COMPANY
>
> By: _____
> Alexander H. Schwartz, Esq.(ct 05773)
> 3695 Post Road, Suite 203
> P.O. Box 701
> Southport, CT   06480-0701
> 203.255.9829
> 203.255.9839 (fax)
> alex@ahschwartz.com

## CERTIFICATION

      I hereby certify that a true copy of the foregoing has been mailed this 16th day of July 2004 to the following counsel and pro se parties:

Mark J. Fox, Esq.
125 Elm Street
New Canaan, CT 06840


_____
Alexander H. Schwartz